1    HONORABLE RONALD B. LEIGHTON

2

3

4

5

6    UNITED STATES DISTRICT COURT
7    WESTERN DISTRICT OF WASHINGTON
     AT TACOMA
8

LASHONN WHITE,                          CASE NO. C12-5987 RBL
9
                    Plaintiff,          ORDER ON MOTION FOR
10                                       ATTORNEYS' FEES AND COSTS
          v.
11                                       [Dkt. # 159]
CITY OF TACOMA, et al.,
12
                    Defendants.
13

14        THIS MATTER is before the Court on Plaintiff White's Motion for attorneys' fees and

15   costs [Dkt. # 159].  White prevailed on only her false arrest claims against Officers Koskovich

16   and Young, and lost on all of her other claims.  She was awarded only nominal damages ($1).

17        The Defendant officers argue that White therefore did not really "prevail," and that she is

18   not entitled to any fee.  They also argue that even if the Court is inclined to award something, the

19   fee should be greatly reduced, both in light of the result and because the attorneys' claimed rates

20   and hours are excessive.

21   **A.  Fee Request**

22        White (and her attorneys Carney, Gillespie, and Isitt) seek $454,607.50 in fees:

23

24

| Attorney | Rate | Hours | Total |
|----------|------|-------|-------|
| Carney | $365.00/hour | 681.1 | $248,601.50 |
| Gillespie | $365.00/hour | 224.2 | $81,833.00 |
| Isitt | $365.00/hour | 340.2 | $124,173.00 |
| **TOTAL** | | **1245.5** | **$454,607.50** |

*See* Invoices at Dkt. #s 160, Ex. A; 161, Ex. A; and 162, Ex. A.  White does not seek fees for work performed on her claims against Pierce County, or on other claims upon which she did not prevail.  The fee request omits hours spent by the firm's paralegal.

**B.  White is the prevailing party and is entitled to an attorneys' fee award.**

Plaintiff argues that despite the fact she obtained only nominal damages, she is the prevailing party.  A plaintiff prevailing on her §1983 claim for violation of her constitutional rights may be awarded reasonable attorneys' fees under 42 U.S.C. §1988.  However, as the Officers emphasize, the Supreme Court has held that while a plaintiff who obtains only nominal damages is in fact a prevailing party, that does not necessarily mean that she is entitled to fees:

> In *some circumstances*, even a plaintiff who formally "prevails" under §1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party.

*Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (emphasis added). See also *Wilcox v. City* of Reno, 42 F.3d 550 (9th Cir. 1994) ("[C]ongress did not intend the statutory fee award to provide a windfall for civil rights attorneys.")

The Officers oppose *any* fee award to White because she lost on almost all of her many claims, and because she obtained only nominal damages. They claim that her victory, like Farrar's, was a "Pyrrhic one, at best." They emphasize the "*de minimis*" nature of her nominal

1  damages award and ask the Court to disregard the 12 *Kerr* factors usually referenced in

2  evaluating the reasonableness of a fee request, and to award no fee at all.

3         Nevertheless, the Officers also grudgingly concede that the "most critical factor" in

4  determining whether the plaintiff is entitled to any fee is to evaluate the degree of success she

5  obtained, beyond the award of nominal damages.  Both parties agree that this is done by

6  evaluating the three factors described *Mahach-Watkins v. Depee*, 593 F.3d 1054 (9th Cir. 2010):

7      **First**, the court should consider "[t]he difference between the amount recovered
       and the damages sought," which in most nominal damages cases will disfavor an
8      award of fees.

9      **Second**, the court should consider "the significance of the legal issue on which
       the plaintiff claims to have prevailed."

10

11     **Third**, the court should consider whether the plaintiff "accomplished some public
       goal."

12 Where the district court has properly weighed these factors, the resulting award is not an

13 abuse of discretion.  *Id*. at 1059-1060 (internal citations omitted)(emphasis added).

14        White concedes that the first factor does not provide support for an award of fees as a

15 prevailing party.  It is worth noting, however, that the *Farrar* plaintiffs were not comparable to

16 Lashonn White.  They sued after one of them was indicted for murder when a teen in his care

17 died.  As Justice O'Connor observed in her concurring opinion, "If ever there was a plaintiff who

18 deserved no attorney's fees at all, that plaintiff is Joseph Farrar. He filed a lawsuit demanding 17

19 million dollars from six defendants. After 10 years of litigation and two trips to the Court of

20 Appeals, he got one dollar from one defendant. As the Court holds today, that is simply not the

21 type of victory that merits an award of attorney's fees." *Farrar*, 506 U.S. at 115.

22 White was not charged, at all, and her claims were not frivolous, even though she did not prevail

23 on most of them.

24

1   White argues that the second and third factors favor treating her as a prevailing party and

2   awarding her attorneys' fees.  She points out this Court already recognized the "great

3   importance" of the issue presented in the case, a conclusion bolstered by the Ninth Circuit's

4   recent opinion in *Sheehan v. San Francisco,* 743 F.3d 1211 (9th Cir. 2014) (ADA requires some

5   accommodation during an arrest of a disabled person).  And she argues that her reputation was

6   cleared (after she spent three days in jail)—a conclusion that the Officers ignore, but which is

7   nevertheless persuasive. The "significance" factor supports the conclusion that White was the

8   prevailing party for purposes of attorneys' fees.

9   The Officers argue that White's lawsuit and the nominal damages award against them did

10  not accomplish "anything," and certainly did not benefit the deaf community or society at large.

11  They claim it obviously did not do any "public good."  White argues that a verdict that shines a

12  light on improper police activity certainly *should* do some public good; hopefully the City and its

13  officers will endeavor to avoid similar arrests in the future.  The Officers concede that changes

14  have been made, but claim they are unrelated to this case.

15  The Court cannot agree that a nominal damages verdict against police officers for false

16  arrest of a deaf woman cannot have any positive impact on anyone but the plaintiff.  That

17  position is wrong, and it is rejected.  The third factor, too, weighs in favor of a determination that

18  White is entitled to fees as the prevailing party.

19  White points out that the Officer's attorney "repeatedly and sternly" urged the jury *not* to

20  award even nominal damages, because doing so would be of "great significance" to her clients.

21  Under these factors, and under *Farrar,* White is a prevailing party entitled an attorneys'

22  fee award.

23

24

**C.  Determination of a reasonable fee.**

The initial step in determining a reasonable fee is to calculate the lodestar figure by taking the number of hours reasonably expended on the litigation and multiplying it by the appropriate hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Overstaffed, redundant, or unnecessary time should be excluded.  *Id.* at 434.  The court must also consider the extent of plaintiffs' success, as that is a "crucial factor" in determining an appropriate award.  *Id.* at 440.

After determining the lodestar figure, the court should then determine whether to adjust the lodestar figure up or down, based on factors not subsumed in the lodestar figure.  These factors[1] were adopted in this Circuit by *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975) *cert. denied*, 425 U.S. 951 (1976). The applicability of the sixth (whether the fee is fixed or contingent) and tenth (the "undesirability " of the case) *Kerr* factors is doubtful after *City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also Davis v. City & County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993)(fixed vs. contingent nature of fee is not to be considered).  Additionally, numerous courts have subsequently held that the bulk of these factors are subsumed in the lodestar calculation.  *See, for example, Blum v. Stenson*, 465 U.S. 886, 898-900 (1984).

---

[1] The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).

1    In any event, the lodestar calculation is presumptively reasonable, and adjustments (up or

2    down) are appropriate only in rare and exceptional cases. *Id.*, *see also Pennsylvania v. Delaware*

3    *Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987).

4    The lodestar calculation is similarly the starting point for determining a reasonable fee

5    under Washington law. *Scott Fetzer v. Weeks*, 114 Wn.2d 109, 786 P.2d 265 (1990); *Absher*

6    *Constr. v. Kent Sch. Dist. No. 415*, 79 Wash. App. 841, 847, 917 P.2d 1086 (1995).

7    Washington's RPC 1.5 lists factors to be considered in evaluating the reasonableness of an

8    attorney's fee:

9       (1) the time and labor required, the novelty and difficulty of the questions
       involved, and the skill requisite to perform the legal service properly;

10

11      (2) the likelihood, if apparent to the client, that the acceptance of the particular
       employment will preclude other employment by the lawyer;

12      (3) the fee customarily charged in the locality for similar legal services;

13      (4) the amount involved and the results obtained;

14      (5) the time limitations imposed by the client or by the circumstances;

15      (6) the nature and length of the professional relationship with the client; and

16      (7) the experience, reputation, and ability of the lawyer or lawyers performing the
       services.

17

18   RPC 1.5(a) (1)-(7).  These factors are consistent with current *Kerr* factors.

19   Other than their initial claim that these factors can be disregarded where a plaintiff

20   obtains only nominal damages and no fee is awarded, the Officers do not dispute these standards.

21   They do strenuously argue that the fees requested are not reasonable.

     **D. Reasonable Hourly Rate.**

22

23   In determining hourly rates, the court must look to the "prevailing market rates in the

24   relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003).  The rates

1  of comparable attorneys in the forum district are usually used.  *See Gates v. Deukmejian*, 987

2  F.2d 1392, 1405 (9th Cir. 1992).  In making its calculation, the court should also consider the

3  experience, skill, and reputation of the attorney requesting fees.  *Schwarz v. Sec'y of Health &*

4  *Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).  The court may rely on its own knowledge and

5  familiarity with the legal market in setting a reasonable hourly rate.  *Ingram v. Oroudjian*, 647

6  F.3d 925, 928 (9th Cir. 2011).

7          The Officers argue that the rate sought by Plaintiff's attorneys [$365.00/hour] is

8  unreasonably high.  They argue that the going rate for "seasoned civil rights litigators" is $275

9  per hour.  This is, at best, misleading.  The claim is based on the Declarations of Richard Jolley

10  and Thomas Miller, both of whom do civil rights *defense* work at rates of approximately

11  $275/hour.

12          Plaintiffs' attorneys, most of whom work on a contingency basis, routinely charge more.

13  This Court has recently awarded rates akin to those sought by the Plaintiff's attorneys here to

14  attorneys with far less experience, and cited a variety of similar cases supporting those rates in

15  doing so.  *See Ostling v City of Bainbridge*, Cause No. 11-5219RBL (Defended by Mr. Jolley),

16  Dkt. #181 at p. 4:

17              The Court will leave the rate as suggested by Plaintiffs ($325 for first chair
                associate Nathan Roberts; $350 for second chair associate Julie Kays; $550 for
18              consultant partner John Connelly; and $125 for litigation paralegal Pamela
                Wells).  The Court notes that it allowed similar rates in a prior case involving
19              local contingency-fee attorneys.  *Cornhusker v. Kachman*, No. 2:09-cv-00273-
                RBL, 2009 WL 2853119, at *4 (W.D. Wash. Sept. 1, 2009) (rates between $350-
20              $450).  *See also Ryan v. Dreyfus*, 2010 WL 1692057, at *5 (W.D. Wash. Apr. 26,
                2010) ($350 rate for civil rights plaintiffs' attorney).  The proposed rates are
21              reasonable.

22  The proposed rate ($365/hour) in this case is reasonable, as well.

23

24

**E.  Reasonable Number of Hours.**

The Officers argue strenuously that the Plaintiff seeks large swaths of time that are not reasonably chargeable to them. They claim that:

- 26.8 of the claimed hours relate exclusively to claims against Defendant Pierce County

- 10.8 hours relate to other miscellaneous activities

- 374 hours were spent on unsuccessful claims

- 480 hours were spent on "undifferentiated" claims against various parties, most of which plaintiff lost.

- 359.7 hours that were spent on "joint" activities, related to multiple claims and parties (and not just to the claim against the Officers upon which plaintiff prevailed)

- 282.96 hours were not segregated by claim or attorney, and that they should "be reduced by 108.4 hours for excessive and redundant billing."

[*See* Holman affidavit and exhibits thereto, Dkt. #173]. The Officers argue, therefore, for a reduction[2] in compensable hours from 1245.5 to 365.8. Multiplied by the $275 rate they advocate, they arrive at a lodestar of $200,595. They then claim that it is "reasonable and necessary" to apply an across-the-board 75% reduction to this lodestar amount, based on the Plaintiff's limited success.  They argue that the fee should be $25,148.12 under this calculation.[3] A summary of the Officers' position is found at Dkt. #173, page 44.

---

[2] The Officers argue that the false arrest claim "could have been effectively tried in one day"—a claim that is not consistent with this Court's experience as to what can be accomplished in the first day of a jury trial with at least six witnesses.  Even a short jury trial requires: selecting the jury, opening statements, direct and cross examination of witnesses, preparing and reading the jury instructions, and closing arguments.  The case could not have been tried in one day, and most of the hours were spent *pre-trial*, in any event.

[3] The Officers also posit an alternate, "back of the envelope" guesstimate of reasonable fees, calculated by multiplying the total hours, minus 75% of those hours, multiplied by the reduced rate, and then reduced *90%*, for a total of $23,235.50.  The difference in the severity of the reduction percentage for "limited success" is not explained.

1    Plaintiff's Reply focuses primarily on her entitlement to any fee, and to the

2  reasonableness of her attorneys' hourly rates, but does not directly address the lodestar

3  calculation and the application of the Kerr factors to her request in light of the success she

4  obtained.

5    By and large, the court should defer to the winning lawyer's professional judgment as to

6  how much time he was required to spend on the case; after all, he won, and might not have, had

7  he been more of a slacker. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

8  With that in mind, however, in determining the reasonable number of hours, the Court must

9  exclude those hours that are excessive, redundant, or otherwise unnecessary.  *Hensley v.*

10 *Eckerhart*, 461 U.S. 424, 434 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946

11 (9th Cir. 2007).

12    The Court agrees that where a plaintiff obtains only an award of nominal damages—even

13 where she overcomes the *Farrar* hurdle and is entitled to some reasonable fee—the otherwise

14 presumptively reasonable lodestar fee must be greatly reduced to account for the admittedly

15 limited success she has obtained.  This is the 7th (and in this case, the only persuasive) *Kerr*

16 factor requiring an adjustment.

17    The Court will start with the Plaintiff's calculation of hours—1245.5, and then reduce

18 that amount by the amount of hours that the Officers have claimed (and largely demonstrated)

19 were spent on other claims, or were duplicative or otherwise excessive, which nets 365.8 hours.

20    Multiplying those hours by the reasonable rate of $365 per hour results in a lodestar

21 calculation of $133,517, attributable to the Plaintiff's success on the false arrest claim.

22    Because she only obtained a nominal damages award—an award reflecting the jury's

23 judgment that her constitutional rights were violated, but that she was not damaged as a result—

24

1    that lodestar is, in this Court's view, too high.  The Court will apply a 50% reduction to the

2    lodestar amount consistent with *Kerr*.

3          It will therefore award Plaintiff's counsel $**66,758.50 in reasonable attorneys' fees**.

4    **F.  Costs.**

5          Plaintiff also seeks $51,452.29[4] in costs.  The Officers' primary objection on this score is

6    that the costs were sought in the wrong format, requiring them to "comb through" the materials

7    to ascertain what was being sought—an exercise they did quite thoroughly with respect to fees.

8    The Court will award costs (**taxable=$11,038.28**) and (**non-taxable=$40,217.96**) in the amount

9    requested, a total of **$51,256.24**.

10         IT IS SO ORDERED.

11         Dated this 22nd day of August, 2014.

12

13                                    RONALD B. LEIGHTON
14                                    UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23         ───────────────────────
           [4] This amount is revised slightly downward in Plaintiff's Reply.  The latter number is
24    used.